Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| RADAMÉS RIVERA COLÓN Y OTROS<br><br>Apelados<br><br>V.<br><br>MUNICIPIO DE SAN JUAN<br><br>Apelante | KLAN202300896 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: SJ2018CV06323 (806)<br><br>Sobre: Injunction Preliminar |

Panel integrado por su presidenta; la Juez Lebrón Nieves, la Juez Barresi Ramos y el Juez Figueroa Cabán

*Lebrón Nieves, Juez Ponente*

## SENTENCIA

En San Juan, Puerto Rico, a 24 de julio de 2024.

El 6 de octubre de 2023, compareció ante este Tribunal de Apelaciones el Municipio Autónomo de San Juan (en adelante, Municipio o parte apelante), mediante recurso de *Apelación*. En el mismo, nos solicita que revisemos la *Sentencia Enmendada* emitida y notificada el 25 de agosto de 2023, por el Tribunal de Primera Instancia, Sala Superior de San Juan. En virtud del aludido dictamen, el foro *a quo* declaró Ha Lugar la *Segunda Demanda Enmendada* presentada por señor Radamés Rivera Colón (en adelante, señor Rivera Colón), señora Raquel E. Vélez Molina (en adelante, señora Vélez Molina) y la Sociedad de Gananciales por ellos compuesta (en adelante y en conjunto, parte apelada) y condenó al Municipio a pagar a la parte apelada la suma de $45,000.00 por concepto de sufrimientos, angustias mentales y daños económicos; al pago de la doble penalidad bajo la Ley 115, *infra,* tanto de dicha partida como de la partida estipulada por

concepto de haberes dejados de percibir, a saber, $40,581.21, y al pago de $5,000.00 de honorarios de abogados por temeridad.

Por los fundamentos que adelante se esbozan, se confirma el dictamen apelado.

**I**

El recurso de marras tiene su génesis en una *Demanda* instada el 15 de agosto de 2018[1], por los señores Rivera Colón, Vélez Molina y la Sociedad de Gananciales compuesta por ambos, sobre *Injunction Preliminar y Permanente, Solicitud de Sentencia Declaratoria, Solicitud de Pago de Salarios Dejados de Percibir y Ley de Represalias,* Ley 115, *infra*, en contra de la entonces Alcaldesa Carmen Yulín Cruz Soto, en su carácter personal (en adelante, Cruz Soto) y en representación del Municipio. Dicha *Demanda* fue posteriormente enmendada, el 10 de abril de 2019.

En apretada síntesis, la parte apelada alegó que, recibió una sanción administrativa de noventa (90) días de suspensión de empleo y sueldo, la cual apeló ante la Comisión de Investigación, Procesamiento y Apelación (en adelante, CIPA). Adujo que, la parte apelante discriminó en su contra por razones políticas e incurrió en represalias en su contra, por haber recurrido de la determinación de destitución emitida por la CIPA y revocada por este Tribunal de Apelaciones. Entre sus reclamos sostuvo que, en el Cuartel al cual fue asignado luego de ser restituido al puesto, lo ubicaron en una oficina contigua a un cuarto insalubre; lo excluyeron del ponche electrónico; le denegaron información sobre sus salarios dejados de percibir; le hicieron retenciones a su sueldo en exceso a las que le correspondían y lo mantuvieron sin poder ejercer las funciones de su puesto y rango.

---

[1] El 21 de agosto de 2018 se enmendó la *Demanda*, a los fines de incluir ciertos anejos.

Acotó que, a pesar de haber sido restituido en su puesto como Policía Municipal de San Juan, el Municipio no le había pagado los haberes dejados de percibir correspondientes al periodo en que se mantuvo expulsado, según lo dictaminado por la CIPA y posteriormente, revocado por este foro revisor.

Luego de acaecidos los trámites de rigor, innecesarios pormenorizar, el 10 de septiembre de 2018, el foro primario celebró una vista evidenciaria, luego de la cual, emitió una *Sentencia Parcial*. En la misma consignó el acuerdo alcanzado entre las partes consistente en el pago por la parte apelante a la parte apelada, de los haberes dejados de percibir en la suma de $40,581.21. En consideración al referido acuerdo, la parte apelada desistió de su solicitud de remedios extraordinarios. Consecuentemente, el caso fue referido al trámite ordinario para la consideración de la causa de acción al amparo de la Ley 115, *infra*.

El 9 de abril de 2019, la parte apelada interpuso una *Moción Solicitando Ejecución de Sentencia y en Solicitud de Orden de Embargo y Mandamiento*. Al día siguiente, presentó *Moción al Expediente Judicial Solicitando: Señalamiento de Status Conference; se Ordene Iniciar los Procedimientos y Confección de la Regla 37.1 de Procedimiento Civil; Segunda Solicitud de Enmienda a Demanda, ahora Ordinaria, Demanda Enmendada; 2da.*

Considerada la solicitud de la parte apelada antes mencionada, así como la *Oposición a la "Moción Solicitando Ejecución de Sentencia y en Solicitud de Orden de Embargo y Mandamiento"* presentada por la parte apelante, el 10 de abril de 2019, notificada al día siguiente, el foro *a quo* declaró *No Ha Lugar* la solicitud de la parte apelada. No obstante, le concedió al Municipio quince (15) días para acreditar el pago de la *Sentencia Parcial* emitida o que en la alternativa, informara el mecanismo a utilizar para el pago de la

misma, con el apercibimiento de la imposición de sanciones ante el incumplimiento con lo ordenado.

El 26 de abril de 2019, la parte apelante instó ante el foro primario *Moción en Cumplimiento de Orden*, en la cual esbozó un plan de pago de la *Sentencia*, que según informó, fue aprobado el 17 de diciembre de 2018, por el Departamento de Justicia, tal cual fue propuesto por el Municipio. El 29 de abril de 2019, el foro primario dio por cumplida su *Orden*.

Acaecidas varias incidencias procesales, el 24 de mayo de 2019, la parte apelante interpuso *Moción de Desestimación,* en la que recabó la desestimación de la totalidad de las reclamaciones presentadas contra el Municipio, a la cual se unió la entonces Alcaldesa, Cruz Soto. Considerada la aludida moción, así como la oposición a la misma, el foro *a quo* declaró No Ha Lugar la referida moción dispositiva.

El 21 de agosto de 2020, el Municipio presentó *Contestación a Segunda Demanda Enmendada*, en la cual negó las alegaciones de discrimen y represalias. Entre sus defensas afirmativas, acotó que, el pago de los haberes dejados de percibir fueron objeto de la *Sentencia Parcial* emitida el 10 de septiembre de 2018 y que el pago de la misma estaba sujeto a las disposiciones de la Ley para Atender la Crisis Económica, Fiscal y Presupuestaria para Garantizar el Funcionamiento del Gobierno de Puerto Rico. Por su parte, Cruz Soto presentó *Contestación a Segunda Demanda Enmendada,* negando asimismo, las alegaciones.

La Conferencia con Antelación al Juicio se celebró el 21 de abril de 2022 y el Juicio en su Fondo, los días 2 y 3 de mayo de 2023. Durante el Juicio en su Fondo, por la parte apelada desfilaron los testimonios del señor Rivera Colón y de la señora Vélez Molina. Por el Municipio, desfilaron los testimonios de la señora Rosa Enid Pérez Vega (en adelante, señora Pérez Vega), de la señora Midaly de

los Ángeles Tellado Sabater (en adelante, señora Tellado Sabater) y de la señora Ileana Cariño Acevedo (en adelante, señora Cariño Acevedo).[2]

El Tribunal de Primera Instancia dictó *Sentencia* el 18 de julio de 2023, notificada al día siguiente, 19 de julio de 2023; la cual fue enmendada el 25 de agosto de 2023, a los fines de incluir las determinaciones de hechos números 48 y 49.

El 2 de agosto de 2023 la parte apelante presentó *Moción en Solicitud de Reconsideración y en Solicitud de Determinaciones de Hecho y Conclusiones de Derecho.*

---

[2] Además, durante el Juicio en su Fondo se marcó la siguiente prueba documental:

- **EXHIBIT 1(A) EN CONJUNTO:** Talonario cheque número 4902797.
- **EXHIBIT 1(B) EN CONJUNTO:** Talonario cheque número 4902829.
- **EXHIBIT 1(C) EN CONJUNTO:** Talonario cheque número 4936600.
- **EXHIBIT 2(A) EN CONJUNTO:** Talonario cheque número 4814889.
- **EXHIBIT 2(B) EN CONJUNTO:** Talonario cheque número 4806703.
- **EXHIBIT 2(C) EN CONJUNTO:** Talonario cheque número 4806413.
- **EXHIBIT 3(A-D) EN CONJUNTO:** Hoja trámite: certificación de ASUME de fecha 23 de octubre de 2020; certificación de deuda del Departamento de Hacienda de fecha 23 de octubre de 2020; certificación deuda del CRIM de fecha de 23 de octubre de 2020, y certificación de Patente de fecha de 30 de octubre de 2020.
- **EXHIBIT 4(A-C) EN CONJUNTO:** Certificación de patente de fecha de 30 de octubre de 2020; certificación de deuda del Departamento de Hacienda de fecha de 22 de octubre de 2020, y certificación de Radicación de Planillas de fecha de 29 de octubre de 2020.
- **EXHIBIT 5(A-E) EN CONJUNTO:** Certificaciones de Raquel Vélez Molina; certificación negativa del CRIM de fecha de 23 de octubre de 2020; certificación de Radicación de Planillas de fecha 11 de noviembre de 2020; certificación de ASUME de fecha 23 de octubre de 2020; certificación de Deuda del Departamento de Hacienda de fecha de 23 de octubre de 2020, y certificación de Patente de fecha de 10 de noviembre de 2020.
- **EXHIBIT 6 EN CONJUNTO:** Informe de cambio de fecha de 6 de junio de 2018.
- **EXHIBIT 7 EN CONJUNTO:** Certificación expediente investigativo de fecha de 11 de febrero de 2020.
- **EXHIBIT 8 EN CONJUNTO:** Solicitud de desglose de pagos de fecha de 24 de enero de 2020.
- **EXHIBIT 9 EN CONJUNTO:** Certificación suscrita por Ingrid G. Cortés Rivera.
- **EXHIBIT 10 EN CONJUNTO:** Certificación de los balances de licencias acumuladas de fecha del 22 de febrero de 2022.
- **EXHIBIT 11 EN CONJUNTO:** Expediente de personal certificado del Sr. Radamés Rivera.
- **EXHIBIT 1 DE LA PARTE DEMANDANTE:** Solicitud de acomodo razonable de fecha de 17 de noviembre de 2020.
- **EXHIBIT 2 DE LA PARTE DEMANDANTE:** Solicitud de cambio de turno de fecha de 20 de marzo de 2020.
- **EXHIBIT 3 DE LA PARTE DEMANDANTE:** Solicitud de desglose de pagos de fecha de 24 de enero de 2020.
- **EXHIBIT 4 DE LA PARTE DEMANDANTE:** Documentos de reconocimiento por desempeño; Cámara de Representantes con fecha de 9 de mayo de 2019; evaluación de empleados período de 2019 y certificación sobre Oficial del Año.
- **EXHIBIT 5 DE LA PARTE DEMANDANTE:** Fotografías sobre el Cuartel de Cupey.

El 10 de agosto de 2023 la parte apelada presentó *Oposición a Reconsideración y Determinaciones de Hechos Adicionales.* Al día siguiente, 11 de agosto de 2023, el foro primario emitió la *Resolución,* que se transcribe a continuación:

Atendido[s] los escritos titulados "Moción en Solicitud de Reconsideración y en Solicitud de Determinaciones de Hecho y Conclusiones de Derecho" presentado por la parte demandada el día 2 de agosto de 2023 y "Oposición a Reconsideración y Determinaciones de Hechos Adicionales" presentado por la parte demandante el día 10 de agosto de 2023, el Tribunal determina lo siguiente:

Se acogen las siguientes determinaciones de hechos adicionales:

1. Los haberes dejados de percibir por la cantidad de $40,581.21 fue pagada en su totalidad mediante plan de pago.

2. El cumplimiento con el pago de los haberes dejados de percibir no constituyó una controversia a ser dilucidada en el juicio en su fondo.

En cuanto a la solicitud de determinaciones de hechos y conclusiones de hechos adicionales y a la solicitud de reconsideración presentada por la demandada el día 2 de agosto de 2023, evaluada la posición de ambas partes en sus respectivos escritos y los autos del caso, se declara No Ha Lugar.

El Municipio instó el 23 de agosto de 2023, *Solicitud Urgente para que se Notifique Sentencia Enmendada.*

El foro *a quo* emitió *Resolución,* en la cual indicó:

Véase Sentencia Enmendada emitida hoy. Se aclara que la sentencia no impone los salarios dejados de devengar sino la partida por concepto de la doble penalidad de los haberes dejados de percibir en virtud de la Ley 115. Nótese que el acuerdo alcanzado por las partes versó sobre la cuantía adeudada pero mantuvo la causa de acción de represalias instada por la parte demandante.

A su vez, emitió *Sentencia Enmendada* en la cual consignó las siguientes determinaciones de hechos:

1. El Sr. Radamés Rivera Colón, en adelante Sr. Rivera, es mayor de edad, casado con la Sra. Raquel E. Vélez Molina, en adelante Sra. Vélez, y, según alegado en la demanda, reside en el Condominio Plaza del Parque, Apto. C2, Edificio 12 en Carolina, Puerto Rico.

2. El Sr. Rivera comenzó a laborar para el Municipio de San Juan como policía municipal en el año 1997. Actualmente se desempeña como teniente de ese mismo cuerpo.

3. En el año 2016 y por unos hechos acontecidos en el año 2014, el Sr. Rivera recibió una sanción administrativa de suspensión de empleo y sueldo por el término de 90 días.

4. El Sr. Rivera solicitó la revisión de dicha determinación ante la Comisión de Investigación, Procesamiento y Apelación (en adelante CIPA), la cual declaró No Ha Lugar su solicitud y modificó la sanción administrativa de suspensión a destitución.

5. El Sr. Rivera procedió a solicitar la revisión de la determinación de la CIPA en el Tribunal de Apelaciones, quien revocó la determinación de destitución y ordenó su reinstalación inmediata.

6. La sentencia del Tribunal de Apelaciones advino final y firme el día 28 de febrero de 2018. Dicha sentencia fue notificada a la CIPA el 13 de marzo de 2018.

7. El Sr. Rivera se personó a la Oficina de Recursos Humanos del Municipio de San Juan y entregó la sentencia emitida por el Tribunal de Apelaciones al Sr. Michael Burquerque con el propósito que se iniciara el proceso de reinstalación.

8. Según la Sra. Midaly de los Ángeles Tellado Sabater, analista de Recursos Humanos del Municipio de San Juan, en adelante Sra. Tellado, el proceso de reinstalación de un empleado tiene varios pasos. Al llegar la resolución o sentencia, se procede a evaluar la misma para conocer lo que se tiene que cumplir, se analiza el expediente de personal con el sistema mecanizado y se realiza un análisis preliminar de cómputos. En los casos de la CIPA, se trabaja en conjunto con el Departamento de la Policía, quienes preparan cierta documentación, tales como informes de cambio, certificación de deudas e identificación de fondos para que el empleado pueda ser reinstalado, entre otros.

9. Según la Sra. Tellado el proceso de reinstalación de un empleado debe tomar aproximadamente un mes.

10. Según la Sra. Ileana Cariño Acevedo, Oficial Administrativo II de la Oficina de Recursos Humanos de la Policía Municipal, en adelante Sra. Cariño, el proceso de reinstalación debe tomar aproximadamente un mes y hasta dos meses máximo, según la complejidad del caso.

11. El Sr. Rivera, al ver que el Municipio de San Juan no comenzaba el proceso de reinstalación, se comunicó en varias ocasiones con la oficina de recursos humanos y no recibió retroalimentación.

12. Ante la inacción del Municipio de San Juan, y habiendo transcurrido varios meses desde que el Tribunal de Apelaciones ordenara su reinstalación inmediata, el Sr. Rivera presentó el día 16 de mayo de 2018 un recurso de Mandamus en el Tribunal de Primera Instancia, Sala de San Juan, caso civil núm. SJ2018CV03211.

13. El día 22 de mayo de 2018, el Sr. Rivera recibió una llamada para que se presentara a trabajar el día 23 de mayo de 2018, un día antes de la vista pautada en el recurso de Mandamus. Habiéndose tornado académica la solicitud, el Tribunal dictó sentencia el día 24 de mayo de 2018.

14. El día 23 de mayo de 2018 el Sr. Rivera fue reinstalado y asignado a la División de Operaciones de Campo en la Comandancia de la Policía Municipal. Inicialmente, lo sentaron en una silla en la oficina al lado del jefe de Operaciones de Campo sin funciones asignadas por varios meses. Luego lo enviaron a tomar un adiestramiento y posteriormente, lo asignaron al cuartel de Cupey, como teniente auxiliar.

15. A pesar de que el Sr. Rivera fue reinstalado a su puesto el día 23 de mayo de [2018], no existe en su expediente carta alguna de reinstalación a su puesto, esto distinto al proceso de reinstalación descrito por la Sra. Tellado.

16. Tampoco obra en el expediente la determinación del Tribunal de Apelaciones ordenando la reinstalación inmediata del Sr. Rivera. La Sra. Tellado no pudo explicar cómo se inició el proceso de reinstalación pues no obra en el expediente la determinación del Tribunal de Apelaciones. La Sra. Tellado no recuerda que ocurrió con relación a la reinstalación del Sr. Rivera durante los meses transcurridos luego de que se recibiera la determinación del Tribunal de Apelaciones.

17. Al Sr. Rivera no se le asignó oficina propia en el cuartel de Cupey. No obstante, dicho cuartel solamente cuenta con dos espacios destinados a oficina para todo el personal.

18. Todo el personal adscrito al cuartel de Cupey registraba su asistencia en la hoja de asistencia y en el libro de entrada y salida.

19. El Sr. Rivera fue trasladado al cuartel de Antillas el 1ro de abril de 2023.

20. Luego de su reinstalación del 23 de mayo de 2018, el Sr. Rivera comenzó a realizar gestiones y en

múltiples ocasiones visitó la Oficina de Recursos Humanos para que le informaran el "status" del pago de los sueldos dejados de devengar.

21. El Municipio de San Juan no puso en condiciones al Tribunal para poder determinar cuál es el procedimiento para el pago de los haberes dejados de devengar en los casos de reinstalación, cuando no media una sentencia del Tribunal disponiendo de dicho pago.

22. Ante la inacción del Municipio de San Juan y habiendo transcurrido varios meses desde su reinstalación, el Sr. Rivera presentó el día 15 de agosto de 2018, la causa de acción de epígrafe.

23. El día 10 de septiembre de 2018 las partes alcanzaron un acuerdo transaccional por la cantidad de $40,581.21 por concepto de los haberes dejados de percibir por el demandante.

24. El 17 de diciembre de 2018 la Secretaria de Justicia aprobó un plan de pago propuesto por el Municipio de tres pagos anuales de $13,527.07 cada uno, todos los noviembres, comenzando el año fiscal 2019-2020.

25. El Sr. Rivera recibió el primer pago del acuerdo transaccional acordado el día 16 de noviembre de 2019. El Sr. Rivera recibió su último pago en noviembre de 2021.

26. Al Sr. Rivera y a su esposa, como requisito para proceder con el pago de los haberes dejados de percibir, se le requirieron varios documentos. Se les requirió la certificación negativa del CRIM, de deuda contributiva y patente municipal, esto último a pesar de que ni el Sr. Rivera ni su esposa tenían negocio propio.

27. La Sra. Tellado no pudo explicar con especificidad que documentación ha requerido a otras personas como parte del proceso de un plan de pago de sentencia.

28. El Municipio de San Juan le realizó deducciones incorrectas a los pagos de salarios que le realizaron al Sr. Rivera luego de su reinstalación.

29. Según la Sra. Rosa Enid Pérez Vega, líder de grupo o supervisora del área de nóminas de la Oficina Central de Recursos Humanos del Municipio de San Juan, en adelante Sra. Pérez, hubo descuentos equivocados por concepto de retiro h[í]brido que no correspondían luego de julio de 2017.

30. A pesar de que el error en el descuento por concepto de retiro fue cometido por el personal del Municipio de San Juan, la Sra. Pérez testificó que le corresponde al empleado realizar las gestiones

directamente con [R]etiro para que le reembolsen la cantidad descontada erróneamente.

31. El Sr. Rivera en varias ocasiones cuestionó al Municipio de San Juan sobre las deducciones realizadas por el Municipio de San Juan a los pagos que le realizaron luego de su reinstalación. La Sra. Tellado nunca se sentó a discutir o explicarle al Sr. Rivera sobre las deducciones realizadas.

32. Por su parte, la Sra. Pérez desconoce si le notificar[o]n al Sr. Rivera sobre el error en el descuento por concepto de retiro híbrido y los pasos a seguir para que le reembolsaran los dineros descontados erróneamente. No obra tampoco en el expediente de personal carta dirigida al empleado a esos efectos.

33. A pesar de que la Sra. Pérez indicó que se ordenó la corrección inmediata del error en el descuento del retiro, se continuaron realizando dichos descuentos en los próximos pagos.

34. El 20 de marzo de 2020 el Sr. Rivera solicitó por escrito a su comandante de cuartel una solicitud de cambio de turno por su condición de apnea del sueño.

35. El 17 de noviembre de 2020 el Sr. Rivera solicitó a su Comandante de Cuartel un acomodo razonable para que se le autorizara a trabajar un turno donde su hora de salida no excediera las 10:00 p.m. por su condición de apnea severa. En dicha comunicación anejó la correspondiente certificación médica.

36. Según la Sra. Cariño el proceso para evaluar una solicitud de acomodo razonable conlleva que el empleado realice una comunicación escrita al Comandante de Cuartel junto al certificado médico donde se realiza la recomendación. El Comandante de Cuartel lo remite al Comandante de Zona y éste lo envía a Operaciones de Campo, quienes lo endosan. Una vez endosado, se remite a Recursos Humanos quienes llenan un formulario y se envía a la Oficina de Recursos Humanos de la Torre Municipal.

37. Según la Sra. Cariño el proceso para aprobar un acomodo razonable puede tardar aproximadamente un (1) mes.

38. La solicitud de acomodo razonable del Sr. Rivera fue recibida en la Oficina de Recursos Humanos del Departamento de Policía y Seguridad Pública del Municipio de San Juan durante el mes de febrero de 2021.

39. Según la Sra. Cariño, en los casos de cambio de horario, por no requerir de mayores cambios, el comandante del cuartel y de zona pueden hacer los

ajustes en el cambio de horario y no tiene que tramitarse en Recursos Humanos.

40. El Sr. Rivera nunca recibió una contestación oficial de la solicitud de acomodo razonable.

41. Durante el mes de abril de 2021 los supervisores del Sr. Rivera le asignaron un horario diurno.

42. Las actuaciones del Municipio de San Juan en el proceso de reinstalación y del pago de los haberes dejados de percibir afectaron emocional y económicamente al Sr. Rivera. El Sr. Rivera no pudo pagar su casa por lo que tiene una deuda pendiente de $9,960.00. No pudo pagar un préstamo de la cooperativa, la carga económica del hogar recayó en su esposa, tuvo que tomar prestado a todo el mundo, incluyendo a sus padres, para poder pagar por su defensa y llegar al Tribunal de Apelaciones, al día de hoy no se ha recuperado económicamente.

43. Para el Sr. Rivera ha sido difícil seguir este proceso por tantos años sin merecerlo.

44. Para el Sr. Rivera ha sido difícil no cumplir con sus obligaciones familiares, tener que carecer. Esta situación afectó su relación con su esposa. Para él no es justo que su esposa tuviera que cargar con lo suyo.

45. Para la Sra. Vélez el tiempo cuando despidieron a su esposo fue bien difícil para toda la familia, sufrieron económica y emocionalmente pues tenía dos trabajos para sustentar su hogar. Tuvo que entregar un vehículo de motor por no poder pagarlo.

46. Para la Sra. Vélez, el alargar todo el proceso hizo que estuviera más cuesta arriba reponerse tanto económica como emocionalmente.

47. La Sra. Vélez observó a su esposo muy afectado, estaba deprimido todo el tiempo. Se sentía muy mal, pero tenía que ser fuerte para darle fuerza a su esposo durante los pasados nueve (9) años. Su relación de pareja se afectó pues [él] se distanció porque se sentía impotente, [él] quería ayudarla y aportar, pero no podía.

48. Los haberes dejados de percibir por la cantidad de $40,581.21 fue pagada en su totalidad mediante plan de pago.

49. El cumplimiento con el pago de los haberes dejados de percibir no constituyó una controversia a ser dilucidada en el juicio en su fondo.

A tenor con tales determinaciones de hechos y con el derecho expuesto en su dictamen, el foro de instancia declaró Ha Lugar la

*Segunda Demanda Enmendada* presentada por la parte apelada y condenó al Municipio a pagar a la parte apelada la suma de $45,000.00 por concepto de sufrimientos, angustias mentales y daños económicos; al pago de la doble penalidad bajo la Ley 115, *infra*, tanto de dicha partida como de la partida estipulada por concepto de haberes dejados de percibir, a saber, $40,581.21, y al pago de $5,000.00 de honorarios de abogados por temeridad.

Inconforme con la determinación, el 6 de octubre de 2023, el Municipio compareció ante nos mediante recurso de *Apelación*, y esbozó los siguientes señalamientos de error:

> Primer Error: Erró el Honorable Tribunal de Primera Instancia al declarar Ha Lugar la Segunda Demanda Enmendada y condenar al Municipio a resarcir a la parte apelada una exagerada suma de dinero por concepto de angustias mentales y daños económicos sin que exista prueba que sustente la acción de represalia por parte del Municipio conforme exige la Ley Núm. 115-1991, *supra*, y la jurisprudencia interpretativa; amparándose en alegaciones no tan solo vagas, estereotipadas y sin fundamento, sino también carentes de evidencia que las sustente.

> Segundo Error: Erró el Honorable Tribunal de Primera Instancia al declarar Ha Lugar la Segunda Demanda Enmendada y valorar los alegados daños por angustias mentales y daños económicos fuera de los parámetros estatutarios y jurisprudenciales, resultando en una suma excesiva e improcedente en derecho.

> Tercer Error: Erró el Honorable Tribunal de Primera Instancia al conceder daños a la co-apelada Raquel E. Vélez Molina y a la Sociedad Legal de Gananciales que compone con Radamés Rivera Colón a la luz de la Ley Núm. 115-1991 en contravención del derecho aplicable.

> Cuarto Error: Erró el Honorable Tribunal de Primera Instancia al conceder doble compensación por la partida de los haberes dejados de percibir a pesar de haberse pagado conforme al acuerdo alcanzado y el plan de pago aprobado.

> Quinto Error: Erró el Honorable Tribunal de Primera Instancia al determinar que el Municipio de San Juan incurrió en temeridad e imponer el pago de honorarios de abogado.

Il 1 de abril de 2024, la parte apelada interpuso ante este foro revisor *Alegato en Oposición*.

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

**II**

### A. Deferencia Judicial

Según es sabido, las determinaciones de hechos y de credibilidad del tribunal sentenciador deben ser merecedoras de gran deferencia por parte de los foros apelativos, puesto que, el juzgador de instancia es quien –de ordinario– se encuentra en mejor posición para aquilatar la prueba testifical. *Argüello v. Argüello*, 155 DPR 62 (2001); *Pueblo v. Bonilla Romero*, 120 DPR 92, 111 (1987); *Hernández Maldonado v. Taco Maker*, 181 DPR 281 (2011); *S.L.G. Rivera Carrasquillo v. A.A.A.*, 177 DPR 345, 356 (2009); *Ortiz Ortiz v. Medtronic*, 209 DPR 759, 779 (2022). Bajo este supuesto, los foros de primera instancia tienen la oportunidad de oír, ver y apreciar el comportamiento de los testigos. *Santiago Ortiz v. Real Legacy et al.*, 206 DPR 194, 219, (2021).

Como regla general, un Tribunal Apelativo no debe intervenir con las determinaciones de hechos ni con la adjudicación de credibilidad que haya efectuado el juzgador de los hechos, ni tiene facultad para sustituir por sus propias apreciaciones, las determinaciones del tribunal de instancia. *Serrano Muñoz v. Auxilio Mutuo*, 171 DPR 717, 741 (2007); *Rolón v. Charlie Car Rental*, 148 DPR 420, 433 (1999). Esto es, los tribunales apelativos deben mantener deferencia para con la apreciación de la prueba que realiza el foro primario. *McConnell Jiménez v. Palau*, 161 DPR 734, 750 (2004).

Sin embargo, la deferencia judicial no es absoluta, pues podrá ser preterida en ciertas instancias. Nuestro Máximo Foro ha reiterado que, los tribunales apelativos "no debemos intervenir con las determinaciones de los juzgadores de primera instancia, salvo que medie pasión, prejuicio, parcialidad o error manifiesto". *Serrano*

*Muñoz v. Auxilio Mutuo,* supra; *Santiago Ortiz v. Real Legacy et al.,* supra, pág. 219; *Rodríguez et al. v. Hospital et al.,* 186 DPR 889, 908-909 (2012); *Dávila Nieves v. Meléndez Marín,* 187 DPR 750 (2013); *S.L.G. Rivera Carrasquillo v. A.A.A.,* supra, pág. 356.

**B. Ley de Acción por Represalia del Patrono**

La Ley Núm. 115 del 20 de diciembre de 1991 (Ley 115-1991), 29 LPRA sec. 194 *y ss.,* conocida como Ley de Acción por Represalia del Patrono, provee protección a empleados frente a represalias que puedan tomar los patronos en contra de estos, por ofrecer algún tipo de testimonio, expresión o información, ya sea verbal o escrita, ante un foro legislativo, administrativo o judicial en Puerto Rico. 29 LPRA sec. 194(a); *Velázquez Ortíz v. Mun. de Humacao,* 197 DPR 656, 668-669 (2017); *Cordero Jiménez v. UPR,* 188 DPR 129 (2013); *Rentas Santiago v. Autogermana, Inc.,* 182 DPR 759 (2011); *S.L.G. Rivera Carrasquillo v. A.A.A.,* supra, pág. 361.

Es una legislación de carácter reparador, basada en la política pública firmemente establecida en nuestra jurisdicción acerca de la protección de los derechos de los trabajadores, por lo que su interpretación judicial debe ser liberal y amplia de manera que se alcancen los objetivos que la originaron. De esta manera, se garantiza la mayor protección de los derechos laborales de los trabajadores. En este proceso interpretativo, toda duda en cuanto a su aplicación deberá resolverse a favor del empleado. *Cordero Jiménez v. UPR,* supra, pág. 138.

El Art. 2 de la Ley Núm. 115, *supra,* dispone que "[n]ingún patrono podrá despedir, amenazar, o discriminar contra un empleado con relación a los términos, condiciones, compensación, ubicación, beneficios o privilegios del empleo porque el empleado ofrezca o intente ofrecer, verbalmente o por escrito, cualquier testimonio, expresión o información ante un foro legislativo, administrativo o judicial de Puerto Rico, cuando dichas expresiones

no sean de carácter difamatorio ni constituyan divulgación de información privilegiada establecida por ley". 29 LPRA sec. 194(a).

La Ley Núm. 115, *supra*, introdujo una enmienda al Art. 2 de la Ley Núm. 80, 29 LPRA 185b, a los fines de establecer que no se considerará justa causa para el despido la colaboración o expresiones hechas por un empleado, relacionada con el negocio de su patrono ante cualquier foro administrativo, judicial o legislativo en Puerto Rico, cuando dichas expresiones no sean de carácter difamatorio ni constituyan divulgación de información privilegiada según la ley. Esta enmienda a la Ley Núm. 80, *supra,* eliminó el requisito de que los testimonios ofrecidos por el empleado sean exclusivamente los vertidos en una investigación. Véase, *Cordero Jiménez v. UPR,* supra, págs. 136-137.

En *Rivera Menéndez v. Action Service,* 185 DPR 431, 445-446 (2012)*, supra,* el Tribunal Supremo resumió:

> La ley crea una presunción "juris tantum" de violación a ésta a favor del querellante, al disponer que éste establece un caso prima facie una vez prueba que participó en una actividad protegida y que fue subsiguientemente despedido, amenazado o discriminado en el empleo. Una vez el querellante establece de forma prima facie su caso, el patrono deberá alegar y fundamentar que tuvo una razón legítima y no discriminatoria para el despido. Ante esto, el empleado aún puede prevalecer si prueba que la razón alegada por el patrono es un simple pretexto para el despido discriminatorio.

Por otra parte, en cuanto al esquema probatorio, la propia Ley Núm. 115-1991, en su Art. 2(c), dispuso las dos vías que tienen los empleados para establecer una causa de acción por represalias. En la primera, el empleado debe valerse de evidencia directa o circunstancial para probar una violación de la ley. En la segunda, el empleado puede establecer un caso prima facie de represalias demostrando que participó en una actividad protegida y que fue subsiguientemente despedido, amenazado o discriminado. 29 LPRA

sec. 194a(c).[3] *Velázquez Ortíz v. Mun. de Humacao*, supra, págs. 670-671; *Rivera Menéndez v. Action Service*, supra, págs. 445-446; *Feliciano Martes v. Sheraton*, 182 DPR 368, 393 (2011).

Con respecto al primer requisito, el Tribunal Supremo ha dicho que cuando un empleado municipal ofrece testimonio o información ante un foro administrativo municipal, éste participa de una actividad protegida. *Id.*; *Rivera Prudencio v. Mun. de San Juan*, 170 DPR 149, 164-165 (2007). El segundo requisito requiere que se demuestre que el patrono tomó una acción adversa y que existe un nexo causal entre dicha acción y el ejercicio de la actividad protegida. *Marín v. Fastening Systems, Inc.*, 142 DPR 499, 511 (1997).

Esta relación de causalidad puede establecerse mediante un criterio de proximidad temporal. Esto es, se puede configurar un caso prima facie de represalias estableciendo que la acción adversa ocurrió al "poco tiempo" del empleado haber participado en la actividad protegida. *Rivera Menéndez v. Action Service*, supra, pág. 446. No obstante, en aquellos casos en que la proximidad temporal no sea el factor más adecuado para establecer una relación de causalidad, el empleado puede recurrir a cualquier otra evidencia que obre en el expediente y que tienda a demostrar la existencia de un nexo causal. *Feliciano Martes v. Sheraton*, supra, pág. 400.

En el inciso (b) del artículo 2 del precitado estatuto[4], se reconoció que:

> Cualquier persona que alegue una violación a esta Ley Núm. 115-1991, *supra*, podrá instar una acción civil en contra del patrono dentro de tres (3) años de la fecha en que ocurrió dicha violación y solicitar se le compense por los daños reales sufridos, las angustias mentales, la restitución en el empleo, los salarios dejados de devengar, beneficios **y honorarios de abogado.** La

---

[3] El resto del Art. 2(c), el cual completa el esquema probatorio, dispone que "[u]na vez establecido lo anterior, el patrono deberá alegar y fundamentar una razón legítima y no discriminatoria para el despido. De alegar y fundamentar el patrono dicha razón, el empleado deberá demostrar que la razón alegada por el patrono era un mero pretexto para el despido". 29 LPRA sec. 194a(c).

[4] 29 LPRA sec. 194a(b) (ed. 2009).

responsabilidad del patrono con relación a los daños y a los salarios dejados de devengar será el doble de la cuantía que se determine causó la violación a las disposiciones de dichas secciones. (*Énfasis suplido*).

## C. *La valorización de daños y la revisión de las cuantías otorgadas*

Como sabemos, el daño constituye el menoscabo material o moral que sufre una persona, ya sea en sus bienes vitales naturales, en su propiedad o en su patrimonio, causado en contravención a una norma jurídica y por el cual ha de responder otra persona. En nuestro ordenamiento jurídico se reconoce la existencia de dos tipos de daños: los especiales, también conocidos como "daños físicos, patrimoniales, pecuniarios o económicos, y los generales, también conocidos como "daños morales". *Nieves Díaz v. González Massas*, 178 DPR 820 (2010). La estimación de los daños es una difícil tarea que descansa en la sana discreción del juzgador que ha recibido prueba detallada sobre los daños alegados, guiado por su sentido de justicia, ante todo, porque son ellos quienes tienen un vínculo más cercano con la prueba testifical y todos los componentes que lo rodean. *Sucn. Mena Pamias, et als v. Meléndez, et als*, 212 DPR 758, 774 (2023); *Cruz Flores v. Hosp. Ryder et al.*, 210 DPR 465, 483 (2022); *Rodríguez et al. v. Hospital, et al.*, supra, pág. 929. Se trata de una labor compleja porque no existe un mecanismo matemático que permita, de forma certera y uniforme valorar los daños exactos que recibe una persona. *Sucn. Mena Pamias*, et als *v. Meléndez, et als*, supra, pág. 769. Por tanto, la valoración de los daños siempre estará sujeta a cierto grado de especulación. *Sagardía de Jesús v. Hosp. Aux. Mutuo*, 177 DPR 484, 509, (2009).

La jurisprudencia ha buscado dar uniformidad y cerrar espacio para la arbitrariedad, utilizando comparativos al momento de establecer la compensación de los daños de una parte. Al revisar una sentencia del Tribunal de Primera Instancia que concedió daños, los foros apelativos debemos considerar la prueba desfilada

y concesiones otorgadas en casos similares resueltos anteriormente. A pesar de que reconocemos que cada caso es distinto y tiene circunstancias particulares, los precedentes son referencia útil para la determinación de si la compensación es exageradamente alta o ridículamente baja. *Rodríguez, et al. v. Hosp., et al.*, supra, pág. 909; *Sucn. Mena Pamias, et al v. Meléndez, et al.*, supra, pág. 774. Es por ello que los tribunales, haremos el ejercicio de mirar aquellos otros casos donde se han probado daños similares para asimismo conceder compensaciones similares. *Escobar Galarza v. Banuchi Pons*, 114 DPR 138, 148 (1983).

Nuestro más Alto Foro ha advertido sobre la importancia de que el Tribunal de Primera Instancia detalle en sus dictámenes los casos que utilizó como referencia o punto de partida para la estimación y valoración de daños y el cómputo realizado para establecer las cuantías que se concedan. *Santiago Montañez v. Fresenius Medical*, 195 DPR 476, 493 (2016). En consecuencia, el Tribunal de Primera Instancia debe exponer de forma específica los casos similares que utilizó como referencia y el cómputo realizado para ajustar las cuantías concedidas en casos similares al valor presente. *Íd.*; *Sucn. Mena Pamias, et al v. Meléndez, et al*, supra, pág. 770.

Es norma reiterada que los tribunales apelativos no debemos intervenir con las determinaciones de los juzgadores de primera instancia, salvo que medie pasión prejuicio, parcialidad o error manifiesto en la apreciación de la prueba. *Dávila Nieves v. Meléndez Marín*, supra, pág. 771. En los casos de daños y perjuicios, específicamente, se ha reconocido que la tarea judicial de estimar y valorar los daños resulta difícil y angustiosa porque no existe un sistema de computación que permita llegar a un resultado exacto con el cual todas las partes queden completamente complacidas. *Herrera, Rivera v. S.L.G. Ramírez-Vicéns*, 179 DPR 774 (2010).

Es por lo que, los tribunales apelativos guardarán deferencia a las valorizaciones de daños que hagan los foros de primera instancia, porque son éstos los que tienen contacto directo con la prueba testifical y quedan en mejor posición para emitir un juicio. *Rodríguez, et al. v. Hosp., et al.*, supra, pág. 909; *Herrera, Rivera v. S.L.G. Ramírez-Vincéns*, supra, pág. 785.

En fin, no intervendremos con las estimaciones de daños que los tribunales de instancia realicen, salvo cuando la cuantía concedida advenga ridículamente baja o exageradamente alta. La valoración de los daños está sujeta a un cierto grado de especulación y conlleva elementos subjetivos, tales como la discreción y el sentido de justicia y conciencia humana del juzgador de los hechos. *Íd*; *Cruz Flores v. Hosp. Ryder et al.*, supra, pág. 497; *Sucn. Mena Pamias*, et als *v. Meléndez, et als*, supra, pág. 774.

Expuesta la normativa jurídica que enmarca la controversia de epígrafe, procedemos a resolver.

**III**

En su ***primer señalamiento de error***, la parte apelante arguye que, incidió el Tribunal de Primera Instancia al declarar Ha Lugar la *Segunda Demanda Enmendada* y condenar al Municipio a resarcir a la parte apelada una exagerada suma de dinero por concepto de angustias mentales y daños económicos sin que exista prueba que sustente la acción de represalia por parte del Municipio conforme exige la Ley Núm. 115-1991, *supra*, y la jurisprudencia interpretativa; amparándose en alegaciones no tan solo vagas, estereotipadas y sin fundamento, sino también carentes de evidencia que las sustente.

Por otro lado, en su ***cuarto señalamiento***, plantea la parte apelante que erró el Tribunal de Primera Instancia al conceder doble compensación por la partida de los haberes dejados de percibir, a pesar de haberse pagado conforme al acuerdo alcanzado y el plan

de pago aprobado. Por estar estrechamente relacionados, discutiremos los señalamientos de error primero y cuarto de manera conjunta.

En aras de atender los anteriores señalamientos de error esgrimidos por la parte apelante, nos corresponde, en primera instancia, determinar si, en efecto, la parte apelada logró probar que fue víctima de represalias en su contra por la parte apelante.

En esencia, la parte apelante arguye que, la parte apelada no cumplió con el estándar probatorio para establecer su causa de acción por represalias. Aduce que, de la prueba desfilada se desprende que la restitución de la parte apelada se efectuó en un término de dos (2) meses y diez (10) días, luego de que este foro apelativo emitiera el Mandato ordenando la restitución a su puesto. Según la parte apelante, el hecho de que la parte apelada recurriera al Tribunal transcurridos unos "escasos" dos meses desde que adviniera final y firme la decisión de este foro apelativo no fundamenta un caso prima facie por represalias. A su juicio, la restitución del apelado se efectuó dentro del plazo promedio que quedó establecido. No coincidimos con tal apreciación. Nos explicamos.

Conforme al derecho previamente esbozado, la Ley 115, *supra*, establece una presunción "*juris tantum*" de violación a ésta a favor del querellante, al disponer que éste **establece un caso *prima facie* una vez prueba que participó en una actividad protegida y que fue subsiguientemente despedido, amenazado o discriminado en el empleo.** Una vez el querellante establece de forma *prima facie* su caso, el patrono deberá alegar y fundamentar que tuvo una razón legítima y no discriminatoria para el despido. Ante esto, el empleado aún puede prevalecer si prueba que la razón alegada por el patrono es un simple pretexto para el despido discriminatorio.

Por otra parte, en cuanto al esquema probatorio, la propia Ley Núm. 115-1991, en su Art. 2(c), dispuso las dos vías que tienen los empleados para establecer una causa de acción por represalias. En la primera, el empleado debe valerse de evidencia directa o circunstancial para probar una violación de la ley. En la segunda, el empleado puede establecer un caso prima facie de represalias demostrando que participó en una actividad protegida y que fue subsiguientemente despedido, amenazado o discriminado. 29 LPRA sec. 194a(c).[5] *Velázquez Ortíz v. Mun. de Humacao*, supra, págs. 670-671; *Rivera Menéndez v. Action Service*, supra, págs. 445-446; *Feliciano Martes v. Sheraton*, supra, pág. 393.

Con respecto al primer requisito, el Tribunal Supremo ha dicho que cuando un empleado municipal ofrece testimonio o información ante un foro administrativo municipal, éste participa de una actividad protegida. *Id.*; *Rivera Prudencio v. Mun. de San Juan*, supra, págs. 164-165. El segundo requisito requiere que se demuestre que el patrono tomó una acción adversa y que existe un nexo causal entre dicha acción y el ejercicio de la actividad protegida. *Marín v. Fastening Systems, Inc.*, supra, pág. 511.

Esta relación de causalidad puede establecerse mediante un criterio de proximidad temporal. Esto es, se puede configurar un caso prima facie de represalias estableciendo que la acción adversa ocurrió al "poco tiempo" del empleado haber participado en la actividad protegida. *Rivera Menéndez v. Action Service*, supra, pág. 446. No obstante, en aquellos casos en que la proximidad temporal no sea el factor más adecuado para establecer una relación de causalidad, el empleado puede recurrir a cualquier otra evidencia

---

[5] El resto del Art. 2(c), el cual completa el esquema probatorio, dispone que "[u]na vez establecido lo anterior, el patrono deberá alegar y fundamentar una razón legítima y no discriminatoria para el despido. De alegar y fundamentar el patrono dicha razón, el empleado deberá demostrar que la razón alegada por el patrono era un mero pretexto para el despido". 29 LPRA sec. 194a(c).

que obre en el expediente y que tienda a demostrar la existencia de un nexo causal. *Feliciano Martes v. Sheraton*, supra, pág. 400.

Repasemos la prueba desfilada por la parte apelante, admitida y aquilatada por el foro primario en el caso que nos ocupa.[6]

De la evidencia presentada ante el foro primario se desprende que, la parte apelada Rivera Colón, comenzó a trabajar como policía municipal en el Municipio de San Juan en el año 1997 y al momento de la celebración del juicio en su fondo, se desempeñaba como teniente de la Policía Municipal de San Juan.[7] A raíz de una investigación administrativa relacionada a hechos acontecidos en el año 2014, en el año 2016, la parte apelada recibió una sanción administrativa de suspensión de empleo y sueldo por el término de 90 días.[8] Tras la apelación de la aludida suspensión ante la CIPA, esta última modificó la sanción a la expulsión la parte apelada del cuerpo policial.[9]

En desacuerdo con lo resuelto, el señor Rivera Colón solicitó reconsideración, la cual le fue denegada.[10] Subsiguientemente, inconforme con la referida determinación, el señor Rivera Colón acudió ante este foro revisor intermedio. Mediante *Sentencia* dictada el 14 de noviembre de 2017, un Panel Hermano de este Tribunal revocó la *Resolución* recurrida emitida por la CIPA el 21 de septiembre de 2016 y notificada el 16 de febrero de 2017. En su consecuencia, le ordenó al Comisionado del Departamento de Policía y Seguridad Pública del Municipio **a reinstalar de inmediato** al teniente Rivera Colón como miembro del cuerpo de la Policía

---

[6] De entrada, es menester destacar que, luego de revisada minuciosamente la transcripción de la prueba oral desfilada en el juicio, razonamos que las determinaciones de hechos realizadas por el foro primario, están apoyadas en la prueba que tuvo ante su consideración.
[7] Véase TPO, pág. 28.
[8] Véase TPO, pág. 29.
[9] Véase TPO vista del 2 de mayo de 2023, pág. 30.
[10] Véase TPO vista del 2 de mayo de 2023, págs. 30-31.

Municipal de San Juan. Dicha sentencia fue notificada a la CIPA el 13 de marzo de 2018.

El señor Rivera Colón se personó a la Oficina de Recursos Humanos del Municipio de San Juan y entregó la sentencia emitida por el Tribunal de Apelaciones al señor Michael Burke con el propósito que se iniciara el proceso de reinstalación.[11] A pesar de las gestiones realizadas por el señor Rivera Colón para que lo reinstalaran a su puesto, según fue ordenado por este foro apelativo, el Municipio no hizo nada al respecto, por lo cual, la parte apelada presentó un recurso de *Mandamus* ante el Tribunal de Primera Instancia con identificación alfanumérica SJ2018CV06323.[12]

Examinada ponderada y minuciosamente la transcripción de la prueba oral, y la totalidad del expediente ante nuestra consideración, coincidimos con el raciocinio de la Juzgadora de Primera Instancia, a los efectos de que el señor Rivera Colón estableció que: 1) participó de una actividad protegida cuando presentó su recurso ante el Tribunal de Apelaciones para revisar la determinación de destitución de la CIPA; 2) que luego de que participara de tal actividad protegida, su patrono el Municipio, incurrió en la conducta adversa en su contra esbozada previamente.

Entre la conducta adversa incurrida por la parte apelante destacamos, entre otras, la dilación injustificada al reinstalar al señor Rivera Colón a su puesto. Puntualizamos que, este foro apelativo intermedio ordenó la restitución ***inmediata*** del señor Rivera Colón en su puesto, sin dejar espacio para que el Municipio lo reinstalase a su discreción. Empero, en total desatención a nuestro Mandato, no fue sino **un día antes de la fecha en que estaba pautada la vista relacionada al recurso de *Mandamus*,** –

---

[11] Hacemos constar que, a pesar de que en la determinación de hecho número 7 se consignó que el señor Rivera Colón le entregó la sentencia del Tribunal de Apelaciones al señor Michael Burquerque, en la apelación se refiere a esa persona como Michael Burke. Véase TPO vista del 2 de mayo de 2023, págs. 31-32.

[12] Véase TPO vista del 2 de mayo de 2023, págs. 31-34.

pautada para **el 22 de mayo de 2018**–, **que el señor Rivera Colón recibió una llamada para que se presentara a trabajar el día 23 de mayo de 2018**.

Así las cosas, el señor Rivera Colón fue reinstalado y asignado a la División de Operaciones de Campo en la Comandancia de la Policía Municipal el 23 de mayo de 2018.[13] Al reinstalarlo, inicialmente, sentaron al señor Rivera Colón en una silla en la oficina al lado del jefe de Operaciones de Campo sin funciones asignadas por varios meses. Luego lo enviaron a tomar un adiestramiento y posteriormente, lo asignaron al cuartel de Cupey, como teniente auxiliar.[14] Al señor Rivera Colón no se le asignó oficina propia en el cuartel de Cupey.[15]

El 17 de diciembre de 2018 la Secretaria de Justicia aprobó un plan de pago propuesto por el Municipio de tres pagos anuales de salario bruto $13,527.07, con un salario neto de $9,619.49[16] cada uno, todos los noviembres, comenzando el año fiscal 2019-2020. La parte apelada recibió el primer pago del acuerdo transaccional acordado el día 16 de noviembre de 2019.[17] Le hicieron otro pago en noviembre de 2020[18] y recibió su último pago en noviembre de 2021.

Al señor Rivera Colón y a su esposa, como requisito para proceder con el pago de los haberes dejados de percibir, le requirieron varios documentos. Se les requirió la certificación negativa del CRIM, de deuda contributiva y patente municipal, esto último, a pesar de que no tenían negocio propio.[19]

Aunque el señor Rivera Colón fue reinstalado a su puesto el día 23 de mayo de 2018, no existe en su expediente carta alguna de

---

[13] Véase TPO vista del 2 de mayo de 2023, págs. 37 y108-109.
[14] Véase TPO vista del 2 de mayo de 2023, págs. 37-39.
[15] Véase TPO vista del 2 de mayo de 2023, pág. 58.
[16] Véase TPO vista del 2 de mayo de 2023, pág. 68.
[17] Véase TPO vista del 2 de mayo de 2023, págs. 64-67.
[18] Véase TPO vista del 2 de mayo de 2023, pág. 67.
[19] Véase TPO, vista del 2 de mayo de 2023, págs. 71-72.

reinstalación a su puesto, esto, distinto al proceso de reinstalación descrito por la señora Tellado Sabater durante su testimonio vertido en corte. El señor Rivera Colón fue trasladado al cuartel de Antillas el 1ro de abril de 2023.

Además, al señor Rivera Colón le hicieron deducciones incorrectas a los pagos de salarios que le realizaron al señor Rivera Colón luego de su reinstalación.[20] De la prueba desfilada también surge y según fue determinado por el foro primario, que, conforme al testimonio de la señora Pérez Vega, líder de grupo o supervisora del área de nóminas de la Oficina Central de Recursos Humanos del Municipio, se le hicieron descuentos equivocados por concepto de retiro híbrido que no correspondían, ello, luego de julio de 2017.[21]

Del testimonio de la señora Pérez Vega se desprende que, a pesar de que el error en el descuento por concepto de retiro fue cometido por el personal del Municipio, le correspondía al empleado realizar las gestiones directamente con Retiro para que le reembolsaran la cantidad descontada erróneamente.[22] El señor Rivera Colón, en varias ocasiones, le cuestionó a la parte apelante sobre las deducciones realizadas a los pagos que le realizaron luego de su reinstalación. Sin embargo, la señora Tellado Sabater nunca se sentó a discutir o explicarle a la parte apelada sobre las deducciones realizadas.[23]

Por otro lado, el 20 de marzo de 2020, el señor Rivera Colón le solicitó por escrito al Comandante de Cuartel, un cambio de turno por su condición de apnea del sueño. Subsiguientemente, el 17 de noviembre de 2020, también le solicitó al Comandante del Cuartel, un acomodo razonable para que se le autorizara a trabajar un turno donde su hora de salida no excediera las 10:00 pm también debido

---

[20] Véase TPO, vista del 2 de mayo de 2023, págs. 82, 89 y págs. 102-109 de la TPO de la vista del 3 de mayo de 2023.
[21] Véase TPO, vista del 3 de mayo de 2023, págs. 98, 102-109.
[22] *Id*, pág. 104.
[23] Véase TPO, vista del 2 de mayo de 2023, pág. 82.

a su condición de apnea severa y anejó a dicha comunicación, la correspondiente certificación médica.[24] Empero, el señor Rivera Colón *nunca* recibió una contestación oficial de la solicitud de acomodo razonable.[25]

Habida cuenta de que la parte apelada estableció mediante prueba a esos efectos, las acciones adversas antes mencionadas de parte de su patrono, le correspondía a este último, probar que sus actuaciones fueron válidas y motivadas por otras razones distintas no relacionadas con la acción protegida ejercida por la parte apelada. Empero, eso no ocurrió. La parte apelante falló al no demostrar que tuvo una razón legítima y no discriminatoria que justificara tal curso de acción.

A pesar de que los testigos de la parte apelante declararon que el proceso de reinstalación, de ordinario, tarda aproximadamente entre uno y dos meses, como máximo[26] según la complejidad del caso, en el caso particular del señor Rivera Colón, transcurrió un término mayor al ordinario sin que la parte apelante justificara tal dilación. Por el contrario, la señora Tellado Sabater, analista de Recursos Humanos del Municipio, declaró desconocer cómo se inició y se tramitó la reinstalación del señor Rivera Colón.

Reiteramos que la parte apelante no logró demostrar ni justificar por qué al señor Rivera Colón no se le asignaron funciones por varios meses luego de su reinstalación, ni las razones para la dilación en exceso del trámite ordinario para el pago de los haberes dejados de devengar.

---

[24] Véase TPO, pág. 91-94.

[25] *Id.*

[26] Destacamos que, según lo consignado en la *Sentencia Enmendada*, a la Juzgadora de Instancia no le mereció credibilidad el testimonio de la señora Tellado Sabater en cuanto a que, en su experiencia, el proceso de reinstalación podría demorarse tres (3) meses. Ello, habida cuenta que durante su interrogatorio directo testificó que el proceso se demoraba aproximadamente un (1) mes y que no fue hasta que advino en conocimiento durante la vista de que el caso del señor Rivera se dilatara en exceso a dicho término, que cambió su testimonio.

El Municipio ni siquiera fue capaz de explicar dicho trámite ni especificar el tiempo aproximado que toma el mismo. Por tal razón, coincidimos con el foro primario que la prueba refleja una inacción injustificada de la parte apelante, en exceso de tres (3) meses, a pesar de los múltiples reclamos realizados por el señor Rivera Colón, los cuales no fueron atendidos hasta tanto no solicitó nuevamente el auxilio del Tribunal.

Otra de las instancias en las cuales la parte apelante exhibió una dilación injustificada ocurrió cuando, a pesar de los múltiples cuestionamientos del señor Rivera Colón sobre las deducciones realizadas en sus cheques, no se hizo nada al respecto. En cambio, nunca le informaron, ni se sentaron a explicarle al señor Rivera Colón sobre las deducciones realizadas, así como tampoco del proceso para que gestionara el reembolso de las cantidades deducidas incorrectamente.

Por último, tampoco desfiló evidencia alguna que justificara la dilación en atender la solicitud de cambio de horario realizada por el señor Rivera Colón. Conforme la prueba presentada, dicho proceso puede tardar aproximadamente un (1) mes, pero en el caso de la parte apelada, tomando en consideración la segunda solicitud, donde incluyó la certificación médica, se demoró más de cinco (5) meses. Insistimos en que el récord del Tribunal se encuentra huérfano de evidencia que justifique tal dilación.

En su **segundo señalamiento**, arguye la parte apelante que, incidió el foro primario al declarar Ha Lugar la *Segunda Demanda Enmendada* y valorar los alegados daños por angustias mentales y daños económicos fuera de los parámetros estatutarios y jurisprudenciales, resultando en una suma excesiva e improcedente en derecho. No le asiste la razón.

Respecto a los daños reclamados por la parte apelada, el foro primario determinó que las actuaciones del Municipio en el proceso

de reinstalación y del pago de los haberes dejados de percibir afectaron emocional y económicamente al señor Rivera Colón. Encontró como un hecho probado el que el señor Rivera Colón no pudo pagar su casa, por lo que tiene una deuda pendiente de $9,960.00.[27] Asimismo, determinó que el señor Rivera Colón tampoco pudo pagar un préstamo de la cooperativa, tuvieron que entregar un vehículo de motor y que la carga económica del hogar recayó en su esposa.[28] Ante esta situación, el señor Rivera Colón tuvo que tomar prestado a todo el mundo, incluyendo a sus padres, para poder pagar por su defensa y llegar al Tribunal de Apelaciones, y que, al presente, no se ha recuperado económicamente.[29] Determinó, además, que para el señor Rivera Colón ha sido difícil seguir este proceso por tantos años sin merecerlo. Resolvió que para este ha sido difícil no cumplir con sus obligaciones económicas, tener que carecer y que esta situación afectó su relación con su esposa. Añadió que para él no es justo que su esposa tuviera que cargar con lo suyo.[30]

La parte apelante arguye que, la prueba presentada no cumple con los requisitos que exige nuestra jurisprudencia ni puede considerarse lo suficientemente categórica como para establecer una presunción de represalia, de acuerdo con la doctrina aplicable. Añade que, el señor Rivera Colón tampoco probó un nexo causal entre la supuesta represalia y los daños económicos y morales que alegó haber sufrido. Enfatizó que, de ordinario, una reclamación por concepto de angustias mentales requiere la presentación de prueba pericial y documental, tanto para probar la validez de la reclamación como para que la parte adversa pueda defenderse adecuadamente, ya que, como regla general, toda la información en torno a la

---

[27] Véase TPO, vista del 2 de mayo de 2023, pág. 100.
[28] *Id.*
[29] *Id.* págs. 100-105.
[30] *Id.*

reclamación por angustias mentales está en manos del reclamante. Respecto al argumento de la parte apelante sobre el "requisito de presentar prueba pericial y documental" para probar sus daños, razonamos que el mismo está basado en su interpretación tergiversada de lo resuelto por nuestro Tribunal Supremo en el caso *Berríos v. González, et al*, 151 DPR 327 (2000).

Es preciso puntualizar que, sobre este particular, las expresiones del Alto Foro se dan en el contexto del alcance del descubrimiento en una causa de acción bajo el trámite ordinario en comparación con el trámite sumario. En específico, en el precitado caso, nuestra última instancia judicial expresó lo siguiente:

> Una lectura integral de la Ley Núm. 2 revela que en el caso del patrono querellado, los mecanismos de descubrimiento de prueba se han adoptado para descubrir prueba pertinente a la querella que no puede ser obtenida por éste de otra forma, ya que no está bajo su control en expedientes, listas o nóminas del trabajo.
>
> En este contexto, al condicionar el uso de los interrogatorios y las deposiciones, la Ley Núm. 2 reconoce que bajo circunstancias excepcionales los tribunales pueden ampliar el descubrimiento de prueba más allá de una sola deposición o un solo interrogatorio. Además, permite la toma de deposiciones a testigos cuando se demuestre tal necesidad. De este modo, aún bajo el esquema sumario de este proceso, los tribunales guardan discreción para flexibilizar las limitaciones que la Ley Núm. 2 impone al patrono en cuanto al descubrimiento de prueba.
>
> Ahora bien, ¿es siempre incompatible el procedimiento sumario con una reclamación de daños por concepto de angustias mentales? Estimamos que no.
>
> De ordinario, una reclamación por concepto de angustias mentales requiere la presentación de prueba pericial y documental, tanto para probar la validez de la reclamación como para que la parte adversa pueda defenderse adecuadamente. *En específico, la adecuada defensa de alegaciones de daños por concepto de angustias mentales depende de forma crucial del alcance y efectividad del descubrimiento de prueba que se realice. Esta es una etapa significativa para la parte demandada, ya que como norma general toda la información en torno a la reclamación por angustias mentales está en manos del reclamante.*
> (Énfasis nuestro).
>
> La discreción que poseen los tribunales bajo el esquema de la Ley Núm. 2 para flexibilizar el descubrimiento de

prueba, en algunas circunstancias, podría resultar suficiente para conferirle al patrono el mínimo de las garantías constitucionales necesarias sin que se desvirtúe el carácter sumario del proceso. No obstante, lo anterior no impide que, a tenor con nuestros pronunciamientos en *Rivera Rivera v. Insular Wire Corp., supra*, luego de un ponderado análisis de los intereses involucrados, el tribunal opte por tramitar la querella de forma ordinaria. Esto es así particularmente cuando la concesión de prórrogas o de un descubrimiento de prueba más extenso dentro de los parámetros de la Ley Núm. 2 resultaría insuficiente para proteger los derechos de las partes, y en última instancia, para hacer cumplida justicia.

De ninguna manera, lo anterior implica que una parte que alega haber sufrido daños como consecuencia de las represalias de su patrono en su contra, venga obligado necesariamente a incurrir en los gastos de prueba pericial para establecer sus daños. El término *de ordinario*, no implica que sea indefectiblemente. Por el contrario, la Ley 115, *supra*, es una ley reparadora del trabajo mediante la cual el obrero agraviado puede reclamar el resarcimiento de sus daños sin que para ello sea imprescindible la prueba pericial. Razonar en contrario, implicaría desvirtuar el propósito mismo de la Ley.

En el caso que nos ocupa, al ser cuestionada en el turno de contrainterrogatorio por el abogado del Municipio sobre si había ido a un médico, a un psicólogo o a un psiquiatra, a causa de los hechos por los que estaban en la vista ese día, la señora Vélez Molina respondió que, ya se habían quedado sin plan médico y tenía mucha carga sobre sus hombros.[31] Ello, toda vez que, al su esposo estar desempleado, confrontaron una situación económica muy complicada.[32]

Dicho lo anterior, la parte apelante no nos ha puesto en posición de determinar que el raciocinio del foro primario fue incorrecto. Ciertamente, el caso utilizado por el foro *a quo* como

---

[31] Véase, TPO del 2 de mayo de 2023, págs. 152-153.
[32] Véase, TPO del 2 de mayo de 2023, págs. 139-142.

referente no es idéntico al caso que nos ocupa. Sin embargo, la Alta Curia también ha resuelto que no hay dos casos iguales y que la estimación de los daños es una difícil tarea que descansa en la sana discreción del juzgador que ha recibido prueba detallada sobre los daños alegados, guiado por su sentido de justicia, ante todo, porque son ellos quienes tienen un vínculo más cercano con la prueba testifical y todos los componentes que lo rodean. *Sucn. Mena Pamias*, et als *v. Meléndez, et als*, supra, pág. 774; *Cruz Flores v. Hosp. Ryder et al.*, supra, pág. 483; *Rodríguez et al. v. Hospital, et al.*, supra, pág. 929. Se trata de una labor compleja porque no existe un mecanismo matemático que permita, de forma certera y uniforme valorar los daños exactos que recibe una persona. *Sucn. Mena Pamias, et al v. Meléndez, et al*, supra, pág. 769. Por tanto, la valoración de los daños siempre estará sujeta a cierto grado de especulación. *Sagardía de Jesús v. Hosp. Aux. Mutuo*, supra, págs. 484, 509.

En su ***tercer señalamiento de error***, la parte apelante señaló que incidió el foro primario al conceder daños a la señora Vélez Molina y a la Sociedad de Gananciales que compone con Rivera Colón a la luz de la Ley Núm. 115-191 en contravención del derecho aplicable. No nos persuade.

Luego de una minuciosa y ponderada revisión del dictamen apelado colegimos que el mismo no le adjudica una suma en daños exclusivamente a la señora Vélez Molina. La parte apelante extrapola las expresiones de la Juzgadora de Primera Instancia, a los efectos de que como consecuencia de las actuaciones del Municipio de San Juan, la parte apelada se afectó tanto emocional como económicamente, razón por la cual le adjudicó la suma de $45,000.00, cantidad que consideró razonable, habida cuenta que los daños sufridos son más que evidentes. No podemos pasar por alto que, conforme surge diáfanamente de la *Sentencia Enmendada*,

los daños que el foro primario adjudicó en este caso, se refieren a la dilación en la restitución, la dilación en el pago de los haberes dejados de devengar, la falta de asignación de tareas al momento de su reinstalación, la dilación en aprobarle una solicitud de cambio de horario en atención a una condición médica, entre otras actuaciones del Municipio.  Sin lugar a dudas, estos daños fueron ocasionados *directamente en la persona de la parte apelada Rivera Colón.*  Ahora bien, tampoco podemos soslayar la realidad fáctica, conforme a la prueba desfilada y aquilatada por el foro *a quo*.  Esto es, que los daños ocasionados a la parte apelada, también tuvieron un impacto directo en su entorno familiar, el que ciertamente, incluye a su esposa y a la sociedad de gananciales compuesta por ambos.  La mención del foro primario en ese sentido no implica, a nuestro juicio, que se esté concediendo a estas últimas un remedio no permitido en ley.[33]

Del testimonio vertido en el juicio por  la señora Vélez Molina y aquilatado por el foro *a quo*, surge que, cuando despidieron a su esposo fue bien difícil para toda la familia, ya que sufrieron económica y emocionalmente, pues ella tenía dos trabajos para sustentar su hogar.[34]  Tuvo que entregar un vehículo de motor por no poder pagarlo.[35]  Para la señora Vélez Molina, el alargar todo el proceso, hizo que estuviera más cuesta arriba reponerse tanto económica como emocionalmente.[36]  Afirmó que, observó a su

---

[33] Por otro lado, de una lectura de la alegación número veintiuno (21) de la *Demanda, Solicitud de Injunction Permanente; Solicitud de Sentencia Declaratoria* se desprende que el reclamo de la parte apelada, no se circunscribe exclusivamente a uno al amparo de la Ley de Represalias, *supra*, sino que, el mismo se hizo también en virtud de las disposiciones del Código Civil de Puerto Rico, *supra*.  Si bien es cierto que, en su dictamen, el foro primario descartó amparar su dictamen en el Artículo 1802 del Código Civil, *supra*, en el caso que nos ocupa, colegimos que dicho precepto legal, en efecto, le es de aplicación al reclamo de la parte apelada. Sin embargo, lo anterior no incide en nuestro dictamen, pues "[d]espués de todo, toda revisión se da contra el dictamen y no sus fundamentos". *Sánchez v. Eastern Air Lines, Inc.*, 114 DPR 691, 695 (1983); *Collado v. ELA,* 98 DPR 111, 114 (1969); *Rodríguez v. Serra*, 90 DPR 776, 777 (1964).
[34] Véase TPO, vista del 2 de mayo de 2023, pág. 139-140.
[35] Véase TPO, vista del 2 de mayo de 2023, pág. 142.
[36] Véase TPO, vista del 2 de mayo de 2023, pág. 140.

esposo muy afectado, estaba deprimido todo el tiempo. Se sentía muy mal, pero tenía que ser fuerte para darle fuerza a su esposo durante los pasados nueve (9) años.[37] Su relación de pareja se afectó, pues su esposo se distanció porque se sentía impotente, él quería ayudarla y aportar, pero no podía.

No albergamos duda que la parte apelada probó a satisfacción tanto del foro primario como de este foro revisor, todas las dificultades tanto económicas como emocionales que confrontó consecuencia de las actuaciones de la parte apelante. En vista de ello, no vemos razón por la cual intervenir con el criterio y valoración realizada del foro *a quo*.

En su ***quinto y último señalamiento de error***, esgrime la parte apelante que erró el Honorable Tribunal de Primera Instancia al determinar que el Municipio de San Juan incurrió en temeridad e imponer el pago de honorarios de abogado.

Determinado por el Tribunal que, en efecto, la parte apelante incurrió en represalias contra la parte apelada, procedía por disposición de ley, la imposición de los honorarios. Colegimos que, ante este escenario, no incidió la Juzgadora de Instancia al imponerle al Municipio honorarios por temeridad.

**IV**

Por los fundamentos que anteceden, se *confirma* el dictamen apelado.

Notifíquese.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[37] Véase TPO, vista del 2 de mayo de 2023, pág. 139.